FILED

2006 Jul-05  PM 02:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **DOMER L. ISHLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-05-S-1108-NE** |
| | ) | |
| **COMMISSIONER OF INTERNAL,** | ) | |
| **REVENUE, UNITED STATES OF** | ) | |
| **AMERICA,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Plaintiff, Domer L. Ishler, asserts claims against three defendants: (1) the Commissioner of Internal Revenue for the United States of America ("the Commissioner"); (2) John L. Richardson, an agent for the Internal Revenue Service ("IRS");[1] and (3) Nissei Sangyo America, Ltd. ("NSA").[2] Plaintiff bases federal subject matter jurisdiction on 28 U.S.C. §§ 1331,[3] 1346,[4] 1361,[5] 2201,[6] and 2202,[7] as

---

[1] Plaintiff sues Richardson in both his individual capacity, and in his official capacity as an IRS agent.

[2] *See* doc. no. 1 (Complaint).

[3] 28 U.S.C. § 1331 states that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[4] 28 U.S.C. § 1346(a)(1) states:

> (a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:

>> (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally

he alleges statutory violations, asserts claims against officials of the United States government, and requests declaratory relief. All of plaintiff's claims arise out of a dispute over his liability for federal income taxes on certain revenue generated in a

---

> assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws[.]

28 U.S.C. § 1346(b)(1) states:

> Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

[5]28 U.S.C. § 1361 states that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

[6]28 U.S.C. § 2201 states, in pertinent part:

> (a) In a case of actual controversy within its jurisdiction, *except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986*, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (emphasis supplied).

[7]Section 2202 states that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202.

business deal involving defendant NSA.

Plaintiff's *pro se* complaint[8] states three explicit causes of action:  (1) a claim for a declaratory judgment that plaintiff is entitled to a federal income tax credit for funds withheld by NSA from the proceeds of a business deal involving plaintiff and NSA; (2) a claim for "damages for breach of trust or fiduciary duty" against Richardson and the IRS; and (3) an "informal claim for refund or credit" from the IRS for taxes allegedly withheld by NSA.[9]  In addition, the complaint — certainly no model of clarity — contains allegations that could be construed as alleging the following, *not* specifically-enumerated claims: (1) fraud against all defendants;[10] (2) breach of contract against NSA;[11] (3) civil conspiracy against all defendants;[12] and (4) a claim for treble damages against NSA under a state statute that plaintiff describes as the "Alabama Salesman Protection Act."[13]  Plaintiff requests entry of an order

---

[8]Plaintiff recently hired counsel.  *See* doc. no. 27 (Notice of Appearance by Cheryl Baswell-Guthrie on behalf of plaintiff).  However, he filed his complaint, and all other pleadings pertinent to this opinion, as a *pro se* litigant.  Plaintiff's attorney has not sought to amend any of plaintiff's pleadings or briefs after appearing as counsel of record.

[9]Complaint, at 16-19.

[10]*See id.* at ¶¶ 1, 31.

[11]*See id.* at ¶ 1.

[12]*See id.* at ¶¶ 2, 31.

[13]*Id.* at ¶ 51.  This court could not locate an Alabama statute entitled the "Alabama Salesman Protection Act."  Thus, the court assumes plaintiff must be referring to the Alabama Sales Representative's Commission Contracts Act, Ala. Code §§ 8-24-1 *et seq.* (1975).  The pertinent provisions of that Act state:

**Sales representative commission contracts; commission due.**

requiring the Commissioner to issue him a tax credit, entry of an order allowing discovery, and damages in the total amount of $185,000,000.[14]  Richardson and the Commissioner jointly filed a motion to dismiss plaintiff's claims against them pursuant to subsections (b)(1), (b)(2), (b)(5), and (b)(6) of Federal Rule of Civil Procedure 12.[15]  NSA also moved to dismiss plaintiff's claims against it pursuant to Rules 12(b)(1) and 12(b)(6).[16]  These motions presently are before the court.

---

> (a) The terms of the contract between the principal and sales representative shall determine when a commission is due.
>
> (b) If the time when the commission is due cannot be determined by a contract between the principal and sales representative, the past practices between the parties shall control, or if there are no past practices, the custom and usage prevalent in this state for the business that is the subject of the relationship between the parties shall control.
>
> (c) All commissions that are due at the time of termination of a contract between a sales representative and principal shall be paid within thirty days after the date of termination.  Commissions that become due after the termination date shall be paid within thirty days after the date on which the commissions become due.

Ala. Code § 8-24-2 (1975).  The damages provision of the Act states that "[a] principal who fails to pay a commission as required by Section 8-24-2 is liable to the sales representative in a civil action for three times the damages sustained by the sales representative plus reasonable attorney's fees and court costs."  Ala. Code § 8-24-3 (1975).

[14]*See* Complaint, at ¶¶ 77-82.  Plaintiff requests $25,000,000 in damages from the Commissioner; $150,000,000 from NSA; and $10,000,000 from Richardson.

[15]Doc. no. 7.  Federal Rule of Civil Procedure 12(b) states, in pertinent part:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, . . . (5) insufficiency of service of process, [or] (6) failure to state a claim upon which relief can be granted . . . .

[16]Doc. no. 8.

# I.  STANDARDS OF REVIEW

## A.    Rule 12(b)(6): Failure to State a Claim Upon Which Relief Can Be Granted

The Federal Rules of Civil Procedure require only that a complaint contain a "'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, a complaint should not be dismissed for failing to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46.  Even so, pleadings must be "something more than an ingenious academic exercise in the conceivable."  *Marsh v. Butler County*, 268 F.3d 1014, 1037 (11th Cir. 2001) (*en banc*).  Although notice pleading may not require that the pleader allege a "specific fact" to cover every element, or allege "with precision" each element of a claim, the Eleventh Circuit has explained that the complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001).

When ruling on a Rule 12(b)(6) motion, the court must accept all well-pleaded

facts as true, and construe them in the light most favorable to the non-moving party.
*Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also, e.g., Brooks v. Blue
Cross and Blue Shield of Florida*, 116 F.3d 1364, 1369 (11th Cir. 1997); *Quality
Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711
F.2d 989, 994-95 (11th Cir. 1983).  Further, "[a] complaint may not be dismissed
because the plaintiff's claims do not support the legal theory he relies upon since the
court must determine if the allegations provide for relief on *any* possible theory."
*Brooks*, 116 F.3d at 1369 (emphasis in original) (citation omitted).

Additionally, the Eleventh Circuit has observed that "[a] statute of limitations
defense may be raised on a motion to dismiss for failure to state a claim for which
relief can be granted under Fed. R. Civ. P. 12(b)(6), when the complaint shows on its
face that the limitations period has run."  *ACCO Corp. v. Precision Air Parts*, *Inc.*,
676 F.2d 494, 495 (11th Cir 1982).

## B.     Rule 12(b)(1): Lack of Subject Matter Jurisdiction

Federal district courts are tribunals of limited jurisdiction, "'empowered to hear
only those cases within the judicial power of the United States as defined by Article
III of the Constitution,' and which have been entrusted to them by a jurisdictional
grant authorized by Congress."  *University of South Alabama v. The American
Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30

-6-

F.3d 1365, 1367 (11th Cir. 1994)).  Accordingly, an "Article III court must be sure of its own jurisdiction before getting to the merits" of any action.  *Ortiz v. Fiberboard Corp.*, 527 U.S. 815, 831 (1999) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 88-89 (1998)); *see also, e.g.*,  *Galindo-Del Valle v. Attorney General*, 213 F.3d 594, 598 n.2 (11th Cir. 2000) (observing that federal courts are "obligated to inquire into subject matter jurisdiction sua sponte whenever it may be lacking."), *cert. denied,* 533 U.S. 949 (2001); *University of South Alabama,* 168 F.3d at 410 ("[A] court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings.").

## C.    Rule 12(b)(2): Lack of Personal Jurisdiction

When ruling upon a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction in the absence of an evidentiary hearing,

> the plaintiff must establish a prima facie case of personal jurisdiction over a nonresident defendant.  A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict.  The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits.  Finally, where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff.

*Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 255 (11th Cir. 1996) (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citations omitted); *see also,*

*e.g.*, *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988).

### D.      **Rule (12)(b)(5): Insufficiency of Service of Process**

Plaintiff bears the burden of establishing that service was properly effected pursuant to Federal Rule of Civil Procedure 4.   *See Prewitt Enterprises, Inc. v. Organization of the Petroleum Exporting Countries,* 224 F.R.D. 497, 501 (N.D. Ala. 2002) (Clemon, J.), *aff'd,* 353 F.3d 916 (11th Cir. 2003).

### E.      *Pro Se* **Litigants**

Parties who appear *pro se* are afforded a leniency not granted to those who are represented by counsel.  *See, e.g.*, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) ("It is settled law that the allegations of [a *pro se* complaint filed by a state prisoner], 'however inartfully pleaded,' are held to 'less stringent standards than formal pleadings drafted by lawyers.'") (quoting *Haines v. Kerner*, 404 U.S. 519 (1972)); *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984) (same); *Woodall v. Foti*, 648 F.2d 268, 271 (5th Cir. 1981)[17] ("A *pro se* complaint, however inartfully drafted, must be held to less rigorous standards than the formal pleadings prepared by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'")

---

[17]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

(quoting *Haines*).

Even so, the leniency accorded *pro se* litigants is not unqualified.  As the Sixth

Circuit has written:

> While courts must apply "less stringent standards" in determining
> whether *pro se* pleadings state a claim for which relief can be granted,
> *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d
> 251 (1976), pro se plaintiffs are not automatically entitled to take every
> case to trial.  As this court has noted, the lenient treatment generally
> accorded to pro se litigants has limits.  *Jourdan v. Jabe*, 951 F.2d 108,
> 110 (6th Cir. 1991).  Where, for example, a pro se litigant fails to
> comply with an easily understood court-imposed deadline, there is no
> basis for treating that party more generously than a represented litigant.
> *Id.*

*Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

## II.  THE ALLEGATIONS OF PLAINTIFF'S COMPLAINT

During the time period relevant to his complaint, plaintiff served as Chief

Executive Officer of Twentieth Century Marketing ("TCM"), a company engaged in

the business of locating manufacturers of electronic products in Asian nations and

finding markets for the sale of those products within the United States.  In 1985,

Ishler (on behalf of TCM) began to negotiate with NSA to locate and purchase audio

cassette tape mechanisms from a Chinese company for installation in the stereo

systems of new Chrysler automobiles.  Chrysler agreed to purchase the cassette

mechanisms over a period of at least three years.

During the negotiation period of TCM's contract with NSA, TCM also partnered with Camaro Trading Company of Hong Kong ("Camaro") to assist in obtaining the cassette mechanisms for sale to Chrysler. The arrangement with Camaro was beneficial to TCM, because Camaro was "in a position to provide and promote financing, clerical, and inspection work, and the necessary services to purchase and sell products from China."[18] Chrysler paid NSA directly for the cassette mechanisms it purchased, and NSA agreed to pay Camaro a five-percent (5%) sales commission on its sales proceeds from Chrysler. Camaro, in turn, agreed to share a portion of this commission with TCM. Between the years 1984 and 1990, this agreement generated approximately $90,000,000 to $100,000,000 in revenue for NSA.

On March 31, 1989, NSA terminated its agreement with Camaro.[19]   Plaintiff

---

[18]Complaint, at ¶ 16.

[19]*See id.* at Appendix A-2 (Notice of Termination). Federal Rule of Civil Procedure 12(b) provides that, when ruling on a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, and

> matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(b).
Even so, there are several circumstances in which a court may consider matters outside the pleadings when ruling upon a 12(b)(6) motion to dismiss, without formally converting it to a Rule 56 motion for summary judgment. *See, e.g.*, *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) (observing that there are some circumstances in which "the usual rules for considering

-10-

states the reason for the termination was NSA's desire to increase profits by eliminating Camaro as a broker, and thereby eliminating Camaro's five-percent commission fee.  The Notice of Termination delivered to Camaro by NSA stated:

> When we made the Agreement with you, you let us assume that you were an Alabama corporation when in fact, as we have just discovered, you are a Hong Kong corporation.  Thereafter, we asked you at least twice about income-tax withholding, and you said that we had no withholding obligation, but you failed to furnish us with IRS Form 4224 (Exemption from Withholding of Tax on Income Effectively Connected with the Conduct of a Trade or Business in the United States).  As you well know, we have not made any withholdings from the commissions paid to you nor, of course, have we filed IRS Form 1042 (Annual Withholding Tax Return for U.S. Source Income of Foreign Persons) or IRS Form 1042S (Foreign Person's U.S. Source Income Subject to Withholding) as to any of those commissions.
>
> Our tax lawyers have concluded that under these circumstances your status as a foreign corporation, in the absence of Form 4424, required us to make the 30% withholding applicable under U.S. tax laws, IRC §881(a), even though that status was unknown to us, and that accordingly our failure to do so, or to make the requisite IRS filings, has exposed us to liability to the IRS.  That exposure would compromise not only the amounts not withheld, plus interest, but statutory penalties as well.  At this juncture, we see the exposure as being in the high six figures.

---

12(b)(6) motions are . . . bent").

One occasion that allows for deviation from the rules is when copies of documents are attached to a plaintiff's complaint.  *Id.* ("Ordinarily, the full text of [a document] would not be part of the record under review for a dismissal under Fed.R.Civ.P. 12(b)(6) *unless it was attached to the complaint*.") (emphasis supplied) (*citing* 5 Charles A. Wright & Arthur Miller, *Federal Practice and Procedure* § 1356, at 590-92 (1969)); *see also Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364, 1368 (11th Cir. 1997) (observing that 12(b)(6) motions are "limited primarily to the face of the complaint *and attachments thereto*") (emphasis added).  Thus, considering the appendices to plaintiff's complaint does not require the court to convert the pending motions to dismiss to motions for summary judgment.

You have thus obligated us and rendered us liable to the Internal
Revenue Service, in breach of paragraph 13(a) of the Agreement, and we
hereby terminate the Agreement as provided in paragraph 12(a)(iii),
effective at once.[20]

---

[20]Complaint, at Appendix A-2 (Notice of Termination).   Paragraph 13(a) of the Sales
Representative Agreement between Camaro and NSA stated:

The relationship created by this Agreement is that [of] principal and selling
agent. [Camaro] is an independent contractor and not an employee of [NSA].
[Camaro] shall not, without prior written consent of [NSA], have any right or
authority, express or implied, to create or assume any obligation of any kind or nature
whatsoever on behalf of [NSA], or to accept legal process, or make any warranty or
representation on behalf of [NSA], or obligate or render [NSA] liable in any manner
whatsoever.

Doc. no. 11 (NSA's brief in support of motion to dismiss), Exhibit C ("Sales Representative
Agreement"), at ¶ 13(a).  Paragraph 12(a)(iii) stated:

Either party may terminate this Agreement immediately upon written notice
in the event that the other party shall breach any term or condition of this Agreement,
shall become insolvent, shall make an assignment for the benefit of creditors, shall
take advantage of any insolvency act or statute, shall commit an act of bankruptcy,
shall have filed against it a petition in bankruptcy or insolvency or for the
appointment of a receiver or trustee of all or a portion of its property, which petition
shall not be dismissed within ten (10) days to bond or make payment on any
execution upon a judgement [sic] against it, or either party shall attempt, without
prior written consent of the other party, to assign all or any part of this Agreement,
or any rights accruing hereafter.

*Id.* at ¶ 12(a)(iii).

Another occasion allowing for deviation from the requirement to convert a 12(b)(6) motion
to one for summary judgment arises when a defendant attaches to its motion to dismiss a document
that is central to the claims in a plaintiff's complaint, and the contents of that document are not in
dispute.  In such cases, the court may refer to the document without converting the motion into one
for summary judgment.  *Harris*, 182 F.3d at 802 n.2 (observing that "a document central to the
complaint that the defense appends to its motion to dismiss is also properly considered, provided that
its contents are not in dispute").  Stated differently, a court may consider such documents as

part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's
attaching such documents to the motion to dismiss will not require conversion of the
motion into a motion for summary judgment. *Venture Assoc. Corp. v. Zenith Data
Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches

NSA also filed a lawsuit for declaratory judgment in the courts of the state of Alabama.   On September 3, 1993, the Supreme Court of Alabama affirmed the declaration of the lower court that no enforceable contract existed between NSA and Camaro.[21]

For a time, NSA continued to pay Camaro the commissions due to it from NSA's prior sales to Chrysler.   Then, on April 12, 1989, NSA sent Camaro a letter bearing the heading "Notice of Set-Off and Deficiency."   The letter stated:

> Please refer to our Notice of Termination dated March 31, 1989 ("Termination Date"), whereunder we terminated the January 1, 1987 Sales Representative Agreement ("Agreement") between you and ourselves (without in any way conceding that such Agreement is, or ever was, valid or enforceable against us), and notified you that we would take appropriate steps to collect any damages we may suffer for having failed, through your actions, to withhold U.S. taxes from the commissions paid to you under the Agreement.   In computing the damages due to us, we intend to take into account your unpaid commissions on sales made prior to the Termination Date — though there is no legal requirement that we do so.
>
> Accordingly, this is to notify you that we will retain those commissions to offset, at least partially, our own liability for the taxes

---

to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."). . . .

*Brooks*, 116 F.3d at 1369.  Plaintiff referred to the Sales Representative Agreement in his complaint, and the Agreement is central to plaintiff's claim.  Additionally, the contents of the Agreement are not in dispute.  Thus, the court may consider the Agreement without converting the pending motions to dismiss into motions for summary judgment.

[21]*See* Complaint, at ¶ 22; doc. no. 11 (NSA's brief in support of motion to dismiss), at Exhibit A (copy of opinion by the Alabama Supreme Court in *Camaro Trading Co. v. Nissei Sangyo America, Ltd.,* 628 So. 2d 463 (Ala. 1993)).  *See also supra,* note 20.

not withheld.  At present, we estimate that such commissions (assuming, for this purpose only, that any commissions are legally due to you) would total approximately $400,000, based on forecasted deliveries through the end of July.

Of course, we cannot predict how the IRS will decide the matter, though in self-protection we will try to induce them, on one basis or another, to accept less than the full amount owed, and we hope that a compromise will be available.  Then, when our IRS situation has been resolved, we will seek reimbursement from you, through legal proceedings if necessary, for any assessment beyond the commissions legally due to you and retained by us, plus our other damages, costs and expenses including attorneys' fees.

We are bringing the entire matter to the attention of the U.S. taxing authorities at once, so as to make some attempt to lessen our exposure to the IRS, and hence yours to us, and also to try to prevent any damage to our reputation and standing with the IRS.  Your own liability for payment of U.S. taxes is, of course, a totally separate matter and does not affect our withholding obligation.  If you conclude that you are not liable for any U.S. taxes and are entitled to a refund of the amounts withheld, any action to be taken at or with the IRS to obtain such a refund is your responsibility and will have to be taken by you.[22]

Plaintiff characterizes this letter as an admission by NSA that it owes Camaro more than $400,000 in accrued commissions.[23]   He also alleges that NSA's withholding of $400,000 created an "IRS Trust Fund," held by NSA to satisfy his (and Camaro's) tax liability.[24]   Plaintiff relies on Section 7501 of the Internal

---

[22]Complaint, at Appendix A-2 (Notice of Set-Off and Deficiency).

[23]*See* Complaint, at ¶ 24.  Plaintiff states this amount now has increased to "at least $1.5 million to $2.5 million."  *Id.* at ¶ 29.

[24]*See id.*

Revenue Code, which states that

> [w]henever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States.  The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose.

26 U.S.C. § 7501(a).  NSA never paid the withheld commissions to Camaro, TCM, or plaintiff, and "it has never been determined" that NSA paid the money over to the IRS.[25]

The IRS conducted a criminal investigation and audit of plaintiff and TCM for the 1988 and 1989 tax years, and assessed taxes on $2,000,000 in commissions actually paid by NSA to Camaro during those years.  TCM received $650,000 of that amount as a "sub-commission" under its contract with Camaro, and TCM paid income taxes on the $650,000 sum.  Plaintiff asserts that this payment satisfied *all* of his (and TCM's) federal tax liability.  Nonetheless, in 2002, the United States Tax Court upheld the assessments imposed upon plaintiff and TCM for taxes on the full $2,000,000 in commission fees.  The Tax Court also declared that plaintiff should be held individually responsible for Camaro's tax liability.[26]   The IRS refuses to

---

[25]*Id.* at ¶¶ 26-27.

[26]*Id.* at ¶ 31.  *See also* doc. no. 11 (NSA's brief in opposition to motion to dismiss), at Exhibit B (March 28, 2002 opinion of the United States Tax Court).  *See also supra,* note 20.

acknowledge the existence of any trust funds created by NSA's withholdings, and it denies that it ever received any money from NSA to satisfy Camaro's tax liability. Thus, the IRS insists that plaintiff is liable for income taxes on all of Camaro's commissions, even though NSA already withheld funds from those commissions to pay taxes.[27]

In 1990, plaintiff's attorney made a demand that the IRS provide plaintiff a tax credit in the amount of the funds withheld by NSA. The IRS never responded to this demand in any manner, and it has refused to respond to any of plaintiff's inquiries about the credit.

Defendant John Richardson, an agent for the IRS, was assigned to investigate plaintiff's case in 1990. In order to arrange a meeting with plaintiff and his counsel on March 28, 1990, Richardson assured plaintiff that the criminal investigation against him had been closed, and that only a civil investigation remained. Despite this representation, however, the criminal charges against plaintiff were reopened several months later, and plaintiff eventually was incarcerated.[28] Richardson also refused to close the civil investigation file on plaintiff, even though he knew that NSA had withheld funds from Camaro that, plaintiff alleges, should have been used

---

[27]Complaint, at ¶¶ 32, 33.

[28]The materials submitted by the parties do not indicate the length of plaintiff's incarceration, or the criminal statute under which he was prosecuted.

to satisfy Camaro's tax liability.  Additionally, Richardson failed to honor, or even to investigate, plaintiff's demand for a tax credit in the amount of the funds withheld by NSA.  Richardson also failed to acknowledge an offer by plaintiff's attorney to hold $400,000 in escrow for payment to the United States pending settlement of the civil proceedings against plaintiff, as long as NSA also paid into escrow the commissions it withheld from Camaro.  Plaintiff claims that Richardson engaged in this conduct with the purposes of destroying TCM as a business, and of ruining plaintiff financially.

The IRS also investigated NSA for fraudulent conduct during the years 1984-1989.  The IRS agreed not to prosecute NSA for approximately $100,000,000 in taxes due, and instead allowed NSA to shift the focus of the investigation to plaintiff, TCM, and Camaro.

Plaintiff alleges that the total amount sought from him by the IRS, including penalties and interest, is $4,000,000.[29]  The IRS apparently has instituted collection proceedings against plaintiff,[30] and plaintiff apparently requested and received a

---

[29]Complaint, at ¶ 54.

[30]26 U.S.C. § 6331(a) grants the I.R.S. the right to levy on a taxpayer's property in order to collect on an unpaid tax liability.  That section states:

> If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under

-17-

collection due process hearing concerning his 1988-89 income tax liability with the IRS Appeals Office.[31]  On May 4, 2005, he received a Notice of Determination from the Appeals Office, setting forth the decision on the collection due process hearing. The Notice stated: "The Internal Revenue Service may proceed with whatever collection action they deem appropriate since you did not provide the necessary financial information for review or offer any alternative to collection that could be accepted at this time."[32]  The Notice also informed plaintiff: "If you want to dispute this determination in court, you must file a petition *with the United States Tax Court*

---

section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax.  Levy may be made upon the accrued salary or wages of any officer, employee, or elected official, of the United States, the District of Columbia, by serving a notice of levy on the employer (as defined in section 3401(d)) of such officer, employee, or elected official.  If the Secretary makes a finding that the collection of such tax is in jeopardy, notice and demand for immediate payment of such tax may be made by the Secretary and, upon failure or refusal to pay such tax, collection thereof by levy shall be lawful without regard to the 10-day period provided in this section.

26 U.S.C. § 6331(a).

[31]26 U.S.C. § 6330 provides the right to such a hearing, stating, in pertinent part:

**(a) Requirement of notice before levy. —**

**(1) In general.** — No levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of their right to a hearing under this section before such levy is made.  Such notice shall be required only once for the taxable period to which the unpaid tax specified in paragraph (3)(A) relates.

[32]Complaint, Appendix A-1 (Notice of Determination), at unnumbered page 2.

for a redetermination within 30 days from the date of this letter."[33]  Plaintiff did not

file a petition with the Tax Court, but instead filed his complaint with this court on

May 31, 2005.

## III.  DISCUSSION

### A.    Motion to Dismiss by the Commissioner of Internal Revenue and John L. Richardson in His Official Capacity

Richardson and the Commissioner argue that this court lacks jurisdiction over

Ishler's claims, and that they are entitled to sovereign immunity.[34]

### 1.    Lack of Jurisdiction

The Commissioner is correct that plaintiff's claims — to the extent they may

be construed as an appeal of the collection due process determination by the IRS —

are not properly before this court.[35]  Pursuant to 26 U.S.C. § 6330, a taxpayer wishing

to appeal an IRS collection due process determination must do so *in the Tax Court,*

unless the Tax Court does not have jurisdiction of the underlying tax liability, in

which event the appeal may be made to a United States District Court.  *See* 26 U.S.C.

---

[33]*Id.* at unnumbered page 1 (emphasis supplied).

[34]Richardson and the Commissioner also argue that plaintiff's complaint should be dismissed for insufficiency of service of process under Federal Rule 12(b)(5).  The court need not consider this argument, because, as set forth *infra,* plaintiff's claims against these defendants are due to be dismissed on other grounds.  However, if the court were considering the issue, it would be inclined not to dismiss the claims of a *pro se* plaintiff for failure to serve, especially considering that Federal Rule 4(i)(3) states that a court should "allow a reasonable time to serve process under Rule 4(i) for the purpose of curing the failure to serve" officers or employees of the United States government.

[35]Plaintiff makes no argument on this point in his brief.

§ 6330.[36]  The Tax Court does possess jurisdiction of disputes relating to income taxes.  *See* 26 C.F.R. § 601.102(b)(1)(I).  Thus, a panel of the Eleventh Circuit has held that "[t]he tax court has *exclusive jurisdiction* over challenges to an IRS determination of income tax liability."  *Peterson v. Kreidich,* 139 Fed. Appx. 134, 135-36 (11th Cir. 2005)(*per curiam*) (emphasis supplied) (citing 26 U.S.C. §§ 6212(a), 6213(a), 7442; 26 C.F.R. §§ 301.6330-1(f)(2)(Q-F3 & A-F3), 601.102(b)(1)(i)).  This exclusive jurisdiction extends to disputes over due process violations arising out of the collection of income taxes.  *See Peterson,* 139 Fed. Appx. at 136 (citing *Voelker v. Nolen,* 365 F.3d 580, 581 (7th Cir. 2004); *Marino v. Brown,* 357 F.3d 143, 146 (1st Cir. 2004); *Martin v. C.I.R.,* 756 F.2d 38, 40 (6th Cir. 1985)).

Here, plaintiff's Count Two falls within the exclusive jurisdiction of the Tax Court.  In the first paragraph of his complaint, plaintiff acknowledges that his claims, "*in part*," regard "the May 4, 2005, Internal Revenue Service, Appeals Office . . . Notice of Determination Concerning Collection Action(s)."[37]  Count Two, entitled "Damages for Breach of Trust or Fiduciary Duty," fits this characterization precisely.  It states:

---

[36]The Notice of Determination plaintiff received from the IRS specifically informed plaintiff that, if he wished to "dispute this determination in court, [he] must file a petition with the United States Tax Court for a redetermination within 30 days from the date of this letter."  Complaint, Exhibit A-1 (Notice of Determination).

[37]Complaint, at ¶ 1 (emphasis supplied).

70.    Ishler avers that the Internal Revenue Service has been engaged in a continuing conspiracy of deprivation of *due process*, statutory rights, and rights identified in the United States Supreme Court and lower federal court decisions.

71.    Ishler avers that the most recent deprivation occurred when IRS appeals agent Celestine Morgan, of Birmingham, Alabama, *Collection Due Process Hearing Officer*, failed by either refusal or neglect to take into consideration the certified and attested fact that NSA had withheld $400,000.00 plus all subsequent commissions, as identified in a letter produced by NSA dated April 12, 1989.

72.    Ishler avers that despite NSA's declared withholding of the specific sum of $400,000.00 and all of the remaining commissions due to Ishler/TCM/Camaro as a result of NSA's sales to Chrysler, the Internal Revenue Service has never taken any action against NSA, even after Ishler made a demand and claim for credit for the funds withheld by NSA.[38]

This claim clearly seeks review of the decision by the Collection Due Process Hearing officer.  As the Tax Court possesses exclusive jurisdiction over this claim, it is due to be dismissed from this court.

Construed most favorably to plaintiff, his other claims — those for a declaratory judgment, an informal claim of refund, fraud, and civil conspiracy — cannot be considered solely as appeals of the collection due process determination. Even so, some of those claims — those for money damages against the Commissioner, and against Richardson in his official capacity — are barred by the doctrine of sovereign immunity.

---

[38]*Id.* at ¶¶ 70-72 (emphasis supplied).

### 2.     Sovereign immunity

"The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood,* 312 U.S. 584, 586 (1941) (citations omitted).  All waivers of the nation's sovereign immunity must be "unequivocally expressed," and all expressed waivers will be strictly construed.  *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33 (1994); *see also id.* at 34 (recognizing the "traditional principle that the Government's consent to be sued 'must be construed strictly in favor of the sovereign,' . . . and not 'enlarge[d] . . . beyond what the language requires'") (citations omitted) (bracketed alterations in original); *Library of Congress v. Shaw,* 478 U.S. 310, 318 (1986) ("In analyzing whether Congress has waived the immunity of the United States, we must construe waivers strictly in favor of the sovereign . . . and not enlarge the waiver "'beyond what the language requires.'") (citations omitted).  When it applies, sovereign immunity is "a complete bar to lawsuits" against the United States.  *State of Fla., Dept. of Business Regulation v. U.S. Dept. of Interior,* 768 F.2d 1248, 1251 (11th Cir. 1985).

The protection of sovereign immunity generally extends to claims against the United States, agencies of the United States government, and employees of those agencies sued in their official capacities.  *See, e.g., Simons v. Vinson,* 394 F.2d 732, 736 (5th Cir. 1968) ("The immunity of the sovereign, however, extends to its agencies

. . . and to the officers of these agencies."); *Kozera v. Spirito,* 723 F.2d 1003, 1008-09

(1st Cir. 1983) ("A federal officer sued for damages in her official capacity is immune

from suit absent an express consent to suit or waiver of immunity.") (citation

omitted).  As the Eleventh Circuit has stated:

> In analyzing the use of any sovereign immunity defense, the first
> question is whether the doctrine applies at all: Is the action a suit against
> the United States as a sovereign?  The answer is obtained by examining
> the nature of the relief which may be provided.  *Alabama Rural Fire
> Insurance Co. v. Naylor,* 530 F.2d 1221, 1225 (5th Cir. 1976).  *See
> Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 687 n.6,
> 69 S. Ct. 1457, 1460 n.6, 93 L. Ed. 1628 (1949).  An action is one
> against the United States as a sovereign where the judgment sought is
> to be satisfied from monies of the federal Treasury, or where the
> judgment interferes with public administration, or where the judgment's
> effect is to compel or restrain the government's actions.  *Dugan v. Rank,*
> 372 U.S. 609, 620, 83 S. Ct. 999, 1006, 10 L. Ed. 2d 15 (1963);
> *Alabama Rural Fire Insurance Co. v. Naylor,* 530 F.2d at 1225.

*Panola Land Buyers Ass'n v. Shuman,* 762 F.2d 1550, 1555 (11th Cir. 1985).[39]

Here, plaintiff seeks monetary damages from Richardson in his official and

individual capacities.  He seeks both monetary damages *and* injunctive relief from the

Commissioner, in his official capacity only.  Any judgment on plaintiff's claims for

monetary damages against the Commissioner and Richardson, in their respective

---

[39]An exception to this general principle exists when the suit alleges: "(1) action by officers
beyond their statutory powers and (2) even though within the scope of their authority, the powers
themselves or the manner in which they are exercised are constitutionally void."  *Dugan,* 372 U.S.
at 621-22 (citing *Malone v. Bowdoin,* 369 U.S. 643, 647 (1962)).  Plaintiff does not allege that either
of these exceptions applies here.

official capacities, would be satisfied out of the federal treasury.  Additionally,

plaintiff's claims for injunctive relief against the Commissioner seek to compel the

Commissioner to take action on behalf of the IRS.[40]  Thus, all of plaintiff's claims

against the Commissioner (both for money damages, and for equitable relief), as well

as plaintiff's claims for money damages against Richardson in his official capacity,

are, in reality, claims against the United States.  These claims will be barred by the

sovereign immunity of the United States, unless a waiver of immunity applies.

Plaintiff relies on 26 U.S.C. §§ 7214(a)(2), 7432(a), and 7433(a) to support a

waiver of sovereign immunity in this case.  First, section 7214 is a *criminal* statute,

and thus cannot be relied upon to provide the basis for a waiver of sovereign

immunity in this *civil* case.[41]

---

[40]Plaintiff seeks a declaration that the Commissioner be required "to credit Ishler with any funds withheld by NSA from Ishler/TCM/Camaro, including the accrued increased amount of such funds at the appropriate interest rate commencing at the time the funds were withheld up to the present . . . ."  Complaint, at ¶ 77.

[41]26 U.S.C. § 7214(a) provides, in pertinent part:

**(a) Unlawful acts of revenue officers or agents.** — Any officer or employee of the United States acting in connection with any revenue law of the United States —

. . . .

(2) who knowingly demands other or greater sums than are authorized by law, or receives any fee, compensation, or reward, except as by law prescribed, for the performance of any duty,

. . . .

shall be dismissed from office or discharged from employment and, upon conviction

-24-

Section 7432 also does not provide an applicable waiver of immunity.  That

section, relating to an IRS agent's failure to release a tax lien, states in pertinent part:

> **(a) In general.** — If any officer or employee of the Internal
> Revenue Service knowingly, or by reason of negligence, *fails to release
> a lien under section 6325* on property of the taxpayer, such taxpayer
> may bring a civil action for damages *against the United States* in a
> district court of the United States.

26 U.S.C. § 7432(a) (boldface emphasis in original, italicized emphasis supplied).

Section 6325 states, in pertinent part:

> **(a) Release of lien.** — Subject to such regulations as the Secretary
> may prescribe, the Secretary shall issue a certificate of release of any
> lien imposed with respect to any internal revenue tax not later than 30
> days after the day on which —

>> **(1) Liability satisfied or unenforceable.** — *The Secretary
>> finds that the liability for the amount assessed, together with all
>> interest in respect thereof, has been fully satisfied or has become
>> legally unenforceable*; or

>> **(2) Bond accepted.** — There is furnished to the Secretary
>> and accepted by him a bond that is conditioned upon the payment
>> of the amount assessed, together with all interest in respect
>> thereof, within the time prescribed by law (including any
>> extension of such time), and that is in accordance with such

---

thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years,
or both.  The court may in its discretion award out of the fine so imposed an amount,
not in excess of one-half thereof, for the use of the informer, if any, who shall be
ascertained by the judgment of the court.  The court also shall render judgment
against the said officer or employee for the amount of damages sustained in favor of
the party injured, to be collected by execution.

26 U.S.C. § 7214(a) (emphasis in original).

requirements relating to terms, conditions, and form of the bond
and sureties thereon, as may be specified by such regulations.

26 U.S.C. § 6325(a) (boldface emphasis in original; italicized emphasis supplied).

Section 7432 clearly does not apply to plaintiff's claims in this suit.  As an initial matter, plaintiff did not file suit against the United States, as the statute requires, but against officials of the United States government.  Further, and more importantly, plaintiff has not shown that he has fully satisfied his income tax liability. To the contrary, the present dispute arises out of the fact that plaintiff has *not* paid taxes.  Plaintiff also has not shown that his tax liability has been declared legally unenforceable by any administrative, legislative, or judicial entity.  To the contrary, the United States Tax Court *upheld* plaintiff's tax liability,[42] and that decision was affirmed by the Eleventh Circuit Court of Appeals.[43]

Additionally, plaintiff has failed to comply (or at least to demonstrate his compliance) with the administrative prerequisites to bringing a suit under § 7432. The regulations implementing § 7432 require a plaintiff to file, and to receive a decision upon, an administrative claim before filing suit in federal court.  *See* 26 C.F.R. § 301.7432-1(e).[44]  Plaintiff has offered no proof, or even an allegation, that

---

[42]*See* doc. no. 11, at Exhibit B.

[43]*Id.* at Exhibit F.

[44]The full text of the pertinent portion of the regulation reads:

**(e) No civil action in federal district court prior to filing an administrative claim**

-26-

he has filed an administrative claim, much less that he has received a decision on such a claim.  Therefore, he cannot maintain a claim under 26 U.S.C. § 7432(a), and he is not entitled to assert a waiver of sovereign immunity based on that statute.  *See, e.g., Shaw,* 478 U.S. at 318 (stating the general principle that all waivers of sovereign immunity must be strictly construed).

Neither can plaintiff rely on the waiver of sovereign immunity provided by 26 U.S.C. § 7433.  That section, relating to unauthorized collection actions, states in pertinent part:

> **(a) In general. –** If, *in connection with any collection of Federal tax* with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence

---

> —

> > **(1)** Except as provided in paragraph (e)(2) of this section, no action under paragraph (a) of this section shall be maintained in any federal district court before the earlier of the following dates:

> > > **(i)** The date a decision is rendered on a claim filed in accordance with paragraph (f) of this section; or

> > > **(ii)** The date 30 days after the date an administrative claim is filed in accordance with paragraph (f) of this section.

> > **(2)** If an administrative claim is filed in accordance with paragraph (f) of this section during the last 30 days of the period of limitations described in paragraph (i) of this section, the taxpayer may file an action in federal district court anytime after the administrative claim is filed and before the expiration of the period of limitations, without waiting for 30 days to expire or for a decision to be rendered on the claim.

26 C.F.R. § 301.7432-1(e) (emphasis in original).

-27-

disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages *against the United States* in a district court of the United States. Except as provided in section 7432, such civil action shall be the exclusive remedy for recovering damages resulting from such actions.

26 U.S.C. §7433 (boldface emphasis in original, italicized emphasis supplied).

Again, the court points out that plaintiff asserts his § 7433 claim against *officials* of the United States government, not *against the United States*. In addition, plaintiff's claim does not challenge actions taken by an IRS employee during *collection* of his tax liability. Indeed, there is no indication that the IRS actually has begun collection actions. Plaintiff apparently has been given notice that such actions are impending, and he has received a collection due process hearing. His present lawsuit is, in part, an attempt to appeal that hearing, but there is no indication that the IRS has begun to collect on the debt.

Instead, plaintiff's claim challenges the *assessment* of the tax itself. Such a claim is not cognizable under § 7433. In this regard, the court finds the holding of the Fifth Circuit in *Shaw v. United States,* 20 F.3d 182 (5th Cir. 1994) to be persuasive. There, the court held that

[t]he plain language of [§ 7433] is well supported by the statute's legislative history. Although in its early form the statute granted taxpayers the right to sue "for damages in connection with the *determination or collection* of any Federal tax," H.R. Conf. Rep. No. 100-1104, 100th Cong., 2d Sess. 228 (1988), *reprinted in* 1988

-28-

U.S.C.C.A.N. 4515, 5288 (emphasis added), Congress later deleted that portion of the statute that referred to determination of taxes. As the Conference Agreement states, § 7433 "is limited to reckless or intentional disregard in connection with the *collection* of taxes. An action under this provision may not be based on alleged reckless or intentional disregard in connection with the *determination* of tax." H.R. Conf. Rep. No. 100-1104, 100th Cong., 2d Sess. 229 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4515, 5289 (emphasis added). Therefore, based upon the plain language of the statute, which is clearly supported by the statute's legislative history, a taxpayer cannot seek damages under § 7433 for an improper assessment of taxes. *See also Miller v. United States,* 763 F. Supp. [1534,] 1543 [(N.D. Cal. 1991)] (noting the difference between an assessment activity and a collection activity). In this case, although the IRS improperly assessed tax liability against Mrs. Shaw, it did not engage in improper collection procedures. Thus, Mrs. Shaw cannot collect damages under § 7433.

*Shaw,* 20 F.3d at 184 (emphasis in original) (footnote omitted). *See also Gandy Nursery, Inc. v. United States,* 412 F.3d 602, 607 (5th Cir. 2005) ("We have previously determined that § 7433 is not the proper vehicle for recovering damages relating to an improper *assessment* of taxes.") (emphasis in original). As plaintiff has no cognizable claim under § 7433, the waiver of sovereign immunity provided by that statute does not apply. *See Brewer v. Commissioner, Internal Revenue,* – F. Supp. 2d –, 2006 WL 1310687, at *3-4 (S.D. Ala. May 12, 2006) (holding that a plaintiff who could not state a viable claim under § 7433 also could not avail itself of that statute's waiver of sovereign immunity).[45]

---

[45]Additionally, plaintiff has failed to satisfy the administrative prerequisites to bringing a § 7433 claim. The regulations implementing § 7433 state, in pertinent part:

The waiver of immunity set forth in the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* ("FTCA"), also does not apply.  Although the FTCA usually does provide a waiver of the nation's sovereign immunity, *Phillips v. United States,* 260 F.3d 1316, 1318 (11th Cir. 2001), there is an exception to that waiver for tax-related claims.  28 U.S.C. § 2680 states, in pertinent part, that the FTCA does not apply to "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty . . . ." 28 U.S.C. § 2680(c).  This provision has been interpreted broadly, and its purpose is to protect the United States from suits arising out of any of its tax-related activities.  *See Capozzoli v. Tracey,* 663 F.2d 654, 657 (5th Cir. Dec. 1981)

---

**(d) No civil action in federal district court prior to filing an administrative claim –**

> **(1)** Except as provided in paragraph (d)(2) of this section, no action under paragraph (a) of this section shall be maintained in any federal district court before the earlier of the following dates:
>
> > **(i)** The date the decision is rendered on a claim filed in accordance with paragraph (e) of this section; or
> >
> > **(ii)** The date six months after the date an administrative claim is filed in accordance with paragraph (e) of this section.
>
> **(2)** If an administrative claim is filed in accordance with paragraph (e) of this section during the last six months of the period of limitations described in paragraph (g) of this section, the taxpayer may file an action in federal district court any time after the administrative claim is filed and before the expiration of the period of limitations.

26 C.F.R. § 301.7433-1(d) (emphasis in original).  Plaintiff has offered no proof, or even an allegation, that he has complied with these administrative prerequisites.

("[I]n enacting Section 2680(c) of the FTCA, Congress intended to insulate the IRS from tort liability stemming from any of its revenue-raising activities."); *Quickley v. United States,* No. CIVA1:04CV1454-TWT, 2004 WL 2827880 (N.D. GA. Oct. 20, 2004) ("[Section 2680(c)] has been given a broad interpretation and applies to suits for damages stemming from activities undertaken to collect taxes."). As plaintiff's claims in this suit relate to the Commissioner's assessment of income tax liability, those claims fall under the § 2680(c) exception to the FTCA's waiver of sovereign immunity.

Finally, the waiver of sovereign immunity for a tax refund suit does not apply. 28 U.S.C. § 1346(a)(1) provides this waiver, stating:

> **(a)** The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
>
> > **(1)** Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws[.]

28 U.S.C. § 1346(a)(1). As a prerequisite to filing suit under § 1346(a)(1), a taxpayer must first pay to the IRS the full amount of the contested tax assessment. *Flora v. U.S.,* 362 U.S. 145, 175-77 (1960). Plaintiff has not done so and, thus, cannot avail himself of the § 1346(a)(1) waiver.

The court concludes, nevertheless, that, construing plaintiff's pleadings in the light most favorable to him, and with the leniency afforded to *pro se* litigants, another waiver of sovereign immunity *is* applicable.  Plaintiff states in his complaint that he "does not concede that the United States is immune from suit *in equity* to determine the proper, lawful, and equitable manner in which the commissions due and owing to Ishler/TCM and Camaro, withheld by NSA, should be adjudged to have been paid with respect to Ishler/TCM and Camaro."[46]

Plaintiff is correct that the protection of sovereign immunity generally does not extend to actions against the United States (or its agencies and employees) seeking non-monetary relief.  Section 702 of the Administrative Procedure Act ("APA") states:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. **An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.**  The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States:  *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance.

---

[46]Complaint, at ¶ 76 (emphasis supplied).

> Nothing herein (1) affects other limitations on judicial review or the
> power or duty of the court to dismiss any action or deny relief on any
> other appropriate legal or equitable ground; or (2) confers authority to
> grant relief if any other statute that grants consent to suit expressly or
> impliedly forbids the relief which is sought.

5 U.S.C. § 702 (italicized emphasis in original, boldface emphasis supplied). This

provision has been construed broadly, and it applies to *all* actions for non-monetary

relief against the United States, not just actions actually pled under the APA. *See*

*Florida Marine Contractors v. Williams,* No. 2:03CV229-T-30SPC, 2004 WL

964216, *2-3 (M.D. Fla. April 22, 2004) ("[T]he waiver of sovereign immunity

contained in Section 702 of the APA is a general waiver of sovereign immunity

without a limitation on whether a cause of action under the APA is also pled.") (citing

*Panola,* 762 F.2d at 1555; *Sheehan v. Army and Air Force Exchange Service,* 619

F.2d 1132, 1139 (5th Cir. 1980), *overruled on other grounds by Army & Air Force*

*Exchange Service v. Sheehan,* 456 U.S. 728 (1982)). Plaintiff requests a declaration

that he is entitled to a tax credit for the commissions withheld by NSA, and an

injunction requiring plaintiff to issue the credit. This claim seeks relief other than

money damages based on the actions or inactions of the Commissioner.[47] Therefore,

---

[47]This is true even though plaintiff requests that the IRS be required to give him a credit for
a substantial sum of money. In *Bowen v. Massachusetts,* 487 U.S. 879 (1988), the Supreme Court
elucidated the meaning of the term "money damages," as it is used in the APA. The Court noted that
"[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient
reason to characterize the relief as 'money damages.'" *Id.* at 893. Instead,

plaintiff's equitable claim against the Commissioner is *not* barred by sovereign immunity.

In summary, all of plaintiff's claims for monetary damages against both the Commissioner and from Richardson, in his official capacity, are barred by sovereign immunity.  Sovereign immunity does not bar plaintiff's monetary claims against Richardson in his individual capacity, however, nor plaintiff's equitable claims against the Commissioner.

### 3.    Declaratory Judgment Act

Even though sovereign immunity does not bar plaintiff's equitable claims against the Commissioner, this court still lacks jurisdiction over those claims. Plaintiff bases his claim for declaratory relief on the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, which explicitly excludes tax-related claims.  Section 2201 states:

---

"[t]he term 'money damages,' 5 U.S.C. § 702, we think, normally refers to a sum of money used as compensatory relief.  Damages are given to the plaintiff to *substitute* for a suffered loss, whereas specific remedies 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.'  D. Dobbs, *Handbook on the Law of Remedies* 135 (1973).  Thus, while in many instances an award of money is an award of damages, '[o]ccasionally a money award is also a specific remedy.'"

*Id.* at 895 (quoting *Maryland Dept. of Human Resources v. Dept. of Health and Human Services,* 763 F.2d 1441, 1446 (D.C. Cir. 1985)).  Here, although plaintiff does assert a claim for compensatory damages from the United States, his equitable claims (for declaratory, and, possibly, injunctive, relief) request that he be credited with money *to which he already is allegedly entitled.*

-34-

(a) In a case of actual controversy within its jurisdiction, *except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986,*[48] a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (emphasis supplied).  The purpose of the tax exception is "to insulate the determination, assessment, and collection of taxes from pre-enforcement judicial interference." *Turner v. Internal Revenue Service,* No. Civ.A.02-0650-CG-C, 2002 WL 31556462, *1 (S.D. Ala. Oct. 8, 2002).  Thus, it is "well settled that a declaratory judgment cannot be issued in a tax case." *Horne v. United States,* 519 F.2d 51, 52 (5th Cir. 1975) (finding that a taxpayer's request that an assessment of tax deficiency be declared void was impermissible under the Declaratory Judgment Act). *See also Melton v. Kurtz,* 575 F.2d 547, 548 (5th Cir. 1978) (rejecting taxpayer's request for a declaration that certain federal tax statutes are unconstitutional and an injunction to prevent the Commissioner from assessing and collecting taxes from him); *Turner,* 2002 WL 31556462, at *1 (rejecting taxpayer's request for a

---

[48]Plaintiff does not attempt to make an argument under section 7428, which concerns tax-exempt charitable organizations.  *See* 26 U.S.C. § 7428.

"declaratory judgment determining the amount of his tax liability and an injunction prohibiting the IRS from collecting the taxes during the pendency of the suit"); *Sands v. United States,* No. 94-0537-CIV, 1995 WL 552308, *5-6 (S.D. Fla. June 19, 1995) (rejecting taxpayer's request for a declaration that he was "never obligated or liable for any unpaid taxes for the years 1984, 1987 or 1990; and further declaring that any and all assessments, liens or notices of lien or levy arising from any such purported taxes were null and void and of no effect whatsoever").

Plaintiff's request for a declaration that he is entitled to an income tax credit for the amount of the commission funds withheld by NSA is a request "with respect to Federal taxes."   As a result, this court lacks jurisdiction over the declaratory judgment claim (Count One of plaintiff's complaint).   *See Turner,* 2002 WL 31556462, at *1 (court lacks jurisdiction over a claim for declaratory relief in a tax case); *West v. United States,* No. Civ.1:00-CV-1800-JO, 2001 WL 1103229, *7 (N.D. Ga. July 30, 2001) (same).

In addition, to the extent plaintiff seeks injunctive relief against the Commissioner, that claim also is barred, as the court's declaration that plaintiff is entitled to a tax credit would be a prerequisite to any injunction requiring the Commissioner to issue that credit. *See Turner,* 2002 WL 31556462, at *2 (dismissing claim for injunctive relief when the underlying claim for declaratory relief also was

-36-

dismissed).

The court concludes the bar against declaratory claims in tax cases (and injunctions arising from those declaratory claims) extends to Count Three of plaintiff's complaint, as well as to Count One.  There is no discernable difference between the relief sought in Count One, and the relief sought in Count Three.  In Count One, plaintiff requests a declaration that he is entitled to an income tax credit for the funds withheld by NSA.  In Count Three, he makes an "Informal Claim for Refund or Credit."  More specifically, he states:

> 74.  Ishler alleges that a demand for credit of the NSA withheld taxes was sent to the Internal Revenue Service, and that such credit should be applied against any claims of liability for taxes due on NSA commission income withheld from Ishler/TCM.  Documents referencing the formal and informal demand for tax credit are attached hereto, as Appendix A-5.

> 75.  Despite NSA's declared withholding of the specific sum of $400,000.00, and all of the remaining commissions due and owing to Ishler, TCM and/or the facilitator, Camaro, as a result of NSA's sales to Chrysler, the Internal Revenue Service has never instituted any action with respect to the demand for credit to Ishler of the NSA withheld IRS trust funds.

> 76.  Ishler does not concede that the United States is immune from suit in equity to determine the proper, lawful, and equitable manner in which the commissions due and owing to Ishler/TCM and Camaro, withheld by NSA, should be adjudged to have been paid with respect to Ishler/TCM and Camaro.

Complaint, at ¶¶ 74-76.  In both of these claims, plaintiff seeks a determination that

he is entitled to a tax credit, and an order compelling the Commissioner to issue him a credit.  Counts One and Three are, in essence, the same claim.

In summary, to the extent plaintiff seeks review of the Collection Due Process Hearing by the IRS, exclusive jurisdiction over that claim rests in the Tax Court. Plaintiff's claims for money damages against the Commissioner, and against Richardson in his official capacity, are barred by sovereign immunity.  Plaintiff's claims for declaratory and injunctive relief are impermissible under the Declaratory Judgment Act.  Therefore, all of plaintiff's claims against the Commissioner, and against Richardson in his official capacity, are due to be dismissed.[49]

## B.    Motion to Dismiss by John Richardson in His Individual Capacity

Plaintiff's fraud and civil conspiracy claims against Richardson, in his individual capacity, are barred by the applicable statutes of limitations.  A fraud or conspiracy claim under Alabama law must be brought within two years of the date on which the claim accrues.  Ala. Code § 6-2-38(*l*) (1975) (2005 Replacement Vol.).  *See Jones v. Kassouf & Co., P.C.,* – So. 2d –, 2006 WL 1304901, *3 (Ala. May 12, 2006) (fraud); *Rumford v. Valley Pest Control, Inc.,* 629 So. 2d 623, 625 (Ala. 1993) (conspiracy).  A fraud claim does not accrue until the plaintiff has discovered the

---

[49]The court is uncertain why Richardson and the Commissioner did not raise collateral estoppel as a defense, as did NSA.  They would have had a strong argument on this point, for the reasons set forth in § III (C)(1), *infra.*

facts constituting the fraud, or when those facts "ought to or should have been discovered; that is, the time of discovery is the time at which the party actually discovered the fraud or had facts that, upon closer examination, would have led to the discovery of the fraud." *Stockton v. CKPD Development Co.,* – So. 2d. –, 2005 WL 3006854, *13 (Ala. Civ. App. Nov. 10, 2005) (citing *Dickens v. SouthTrust Bank of Alabama, N.A.,* 570 So. 2d 610, 612 (Ala. 1990); *Lader v. Lowder Realty Better Homes & Gardens,* 512 So. 2d 1331, 1332 (Ala. 1987) (internal quotation marks omitted)); *see also* Ala. Code § 6-2-3 (1975) (2005 Replacement Vol.).

Plaintiff filed this action on May 31, 2005. Thus, any claims that accrued before May 31, 2003 are time-barred. Plaintiff does not allege that Richardson took any actions related to his claims after that date. In fact, Richardson's relevant actions occurred no later than 1990 or 1991, during his investigation of plaintiff. The only events occurring after May 31, 2003 were the Eleventh Circuit's issuance of an order affirming the decision of the Tax Court,[50] and the issuance by the IRS of the Notice of Determination on plaintiff's collection due process hearing.[51] Neither of these events involved additional actions taken by Richardson. Plaintiff nonetheless asserts his claims are timely, stating:

The United States has kept this matter in an active mode since the

---

[50]Doc. no. 11, at Exhibit F.

[51]Complaint, at Exhibit A-1.

> inception of the efforts to destroy Ishler in 1989.  Ishler has only
> recently, after rejection of incompetent counsel, and diligent inquiry into
> the matter, discovered the fraud perpetrated against Ishler, by the
> Commissioner, John L. Richardson, and NSA.[52]

Plaintiff's argument that he "only recently" discovered Richardson's alleged fraud is

unpersuasive, as plaintiff has been involved in ongoing investigation and litigation

concerning his tax liability for more than fifteen years.  Plaintiff almost certainly had

actual knowledge of Richardson's actions as early as 1990, when Richardson's

investigation of him began.  Even if he did not have actual knowledge, he had

knowledge of facts sufficient to lead him to discovery of the alleged fraud.

Accordingly, plaintiff's fraud claim against Richardson is time-barred.

Because his fraud claim is time-barred, his claim for conspiracy to commit fraud also

is time-barred.  *See Boyce v. Cassese,* – So. 2d –, 2006 WL 1119285, *8 (Ala. April

28, 2006) ("We have concluded that the Boyces' claims of fraudulent

misrepresentation and fraudulent suppression are time-barred.  For the same reasons,

the Boyces' conspiracy claims against the Casseses are time-barred.").[53]

---

[52]Doc. no. 12, at ¶ 28.

[53]In *Boyce,* the Alabama Supreme Court relied upon a previous decision that held, because
the plaintiff's "conspiracy to defraud claim is dependent upon the underlying fraud, the statute of
limitations on that claim began to run at the same as did the statute for the underlying fraud claim."
*Boyce,* 2006 WL 1119285, at *8 (citing *Kelly v. Alexander,* 554 So. 2d 343, 344 (Ala. 1989),
*overruled on other grounds by Ford Motor Co. v. Neese,* 572 So. 2d 1255 (Ala. 1990)).  This is but
another way of stating the familiar principle that a claim for civil conspiracy cannot proceed if the
tort claim underlying the conspiracy is not viable.  *See, e.g., McLemore v. Ford Motor Co.,* 628 So.
2d 548, 551 (Ala. 1993) ("Because the underlying cause of action is not viable, the conspiracy claim
must also fail.") (citing *Allied Supply Co. v. Brown,* 585 So. 2d 33, 36 (Ala. 1991)).

**C.**   **Motion to Dismiss by Nissei Sangyo American, Ltd.**

Construing plaintiff's complaint in the light most favorable to him, plaintiff asserts legal claims against NSA for fraud, conspiracy, breach of contract, and violation of the Alabama Sales Representative's Commission Contracts Act, as well as equitable claims for a declaratory judgment and an accounting.  NSA argues that plaintiff's claims against it must be dismissed because: (1) plaintiff is collaterally estopped from asserting all his claims; (2) plaintiff lacks standing to pursue a breach of contract claim; and (3) all claims are barred by the applicable statutes of limitations.

**1.**   **Collateral estoppel**

NSA first asserts that plaintiff is collaterally estopped from asserting his claims due to the preclusive effect of:  the prior decision by the Tax Court; the prior decision of the Eleventh Circuit Court of Appeals, affirming the Tax Court; and the decision of the Alabama Supreme Court that no enforceable contract existed between NSA and Camaro. The analysis of this issue requires an important distinction — unrecognized, or at least unmentioned, by any of the parties — between federal and state law.  When considering the preclusive effect of a prior *federal* judgment, a court must apply *federal* preclusion law.  *See, e.g., CSX Transportation, Inc. v. Brotherhood of Maintenance of Way Employees,* 327 F.3d 1309, 1316-17 (11th Cir. 2003) ("We now

hold that federal preclusion principles apply to prior federal decisions, whether previously decided in diversity or federal question jurisdiction."). On the other hand, when considering the preclusive effect of a prior *state* judgment, the court must apply *state* preclusion law. *See, e.g., Mitchell v. Humana Hospital-Shoals,* 942 F.2d 1581, 1582-83 (11th Cir. 1991) ("A federal court . . . is to accord a prior state judgment the same preclusive effect as would courts of the state issuing the judgment.") (citation omitted). Thus, the preclusive effect of the decisions by the Tax Court and the Eleventh Circuit must be considered separately from the preclusive effect of the decision of the Alabama Supreme Court.

### a.    Tax Court and Eleventh Circuit decisions

NSA first asserts that the decisions of the Tax Court and the Eleventh Circuit preclude plaintiff from relitigating the issue of whether he is entitled to a credit for the $400,000 in commissions allegedly withheld by NSA in 1989. Because NSA argues the preclusive effect of prior *federal* judgments, federal preclusion principles apply. In the Eleventh Circuit,

> "[c]ollateral estoppel or issue preclusion forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit. There are several prerequisites to the application of collateral estoppel: (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full

and fair opportunity to litigate the issue in the earlier proceeding." *I.A. Durbin, Inc. v. Jefferson Nat'l Bank,* 793 F.2d 1541, 1549 (11th Cir. 1986).

*CSX Transportation,* 327 F.3d at 1317.  The court finds that all these requirements are satisfied with regard to the previous decisions by the Tax Court and the Eleventh Circuit.

First, the issue asserted by plaintiff here is identical to an issue involved in the Tax Court and Eleventh Circuit litigation.  Plaintiff argues that he is entitled to a credit for the $400,000 in commissions allegedly withheld by NSA, and that NSA should have to either pay those withholdings over to the IRS, or account for the manner in which the funds have been disbursed.  Stated differently, plaintiff argues that he should not have been held liable for this $400,000 tax liability.  The Tax Court held that plaintiff was liable for unpaid taxes, including the $400,000 amount withheld by NSA, and the Eleventh Circuit upheld that decision on appeal.[54]

Further, this issue was actually litigated in the Tax Court.  In Ishler's trial memorandum to the Tax Court, he sated:

On March 31, 1989, NSA sent Camaro a notice of termination of the Sales Representative Agreement.  Also on March 31, 1989, NSA

---

[54]*See* doc. no. 11, at Exhibits B, F.  The NSA withholdings were not the only items of plaintiff's tax liability discussed in the opinion of the Tax Court, but they were considered nonetheless.  Additionally, plaintiff stated in his complaint that, "[d]uring the course of the years from 1989 to 2005, the Tax Court and the IRS refused to admit the existence of the IRS trust funds withheld by NSA."  Complaint, at ¶ 32.

filed a declaratory judgment action in the Circuit Court of Madison County, Alabama against Camaro, seeking a declaration that the Sales Representative Agreement was void.  On April 12, 1988, NSA also notified Camaro that it was withholding approximately $400,000 from Camaro's commissions for purposes of offsetting any tax liability owed by NSA.  Thus, NSA was sharing information with the I.R.S before NSA canceled the Sales Representative Agreement and withheld approximately $400,000 from Camaro.[55]

Plaintiff also stated:

On April 20, 1992, Camaro presented an offer to the Revenue Agent Richardson.  Camaro offered to put $400,000 in escrow with the I.R.S.  In return, Camaro requested that NSA deposit with the I.R.S. the amount that it had withheld from Camaro.  Camaro apparently never received any response from the I.R.S.[56]

The Tax Court's consideration of these statements is reflected in its opinion:

NSA terminated the NSA/Camaro agreement on March 31, 1989. In the notice of termination, NSA stated that Camaro had let NSA erroneously assume that Camaro was an Alabama corporation when the agreement was executed.  Because Camaro was a Hong Kong corporation, NSA faced unexpected liability for a large amount of withholding tax under section 881(a) (plus penalties and interest).  On April 12, 1989, NSA told Camaro that NSA would retain unpaid commissions otherwise due to Camaro to offset that potential tax liability.[57]

Ishler raised the issue again in his appellate brief to the Eleventh Circuit, where he stated:

NSA sent Notices of Termination of the Contract and quit paying

---

[55]Doc. no. 11, Exhibit E, at 5 (emphasis in original).

[56]*Id.* at 7.

[57]Doc. no. 11, Exhibit B. at 10-11.

-44-

commissions.   NSA claimed it was withholding $400,000.00 of Camaro's commissions to pay taxes. . . .

Ishler later learned that NSA was being investigated for failure to pay U.S. taxes. . . .

Still later, NSA claimed it was gong to offset $400,000.00 for commissions owed to Camaro against any tax liability owed to the IRS for withholding on the commissions . . .

NSA ultimately brought suit in Alabama against Camaro.  There was a ruling that NSA could get out of the contract because Camaro was not registered to do business in Alabama. . . .

At the same time the suit was going on, NSA was trying to hire Scott Taylor away from TCM. . . .

The last commission check Camaro received from NSA was in March, 1989.

Ishler incurred $350,000.00 in personal legal expenses as a result of the Camaro-NSA litigation. . . .

Ishler pointed out to IRS counsel that NSA was withholding money from Camaro that legally belonged to Camaro in order to pay withholding taxes. . . .[58]

In the same brief, plaintiff stated:

While IRS apparently convinced the Tax Court that [funds] had escaped U.S. taxation, IRS never disclosed the results of [its audit of NSA], the disposition of the $400,000 which NSA claimed it had withheld out of the commission checks due Camaro to pay withholding tax.  Ishler and TCM's knowledge of NSA's withholding, which was done by NSA at the ultimate expense of Camaro, TCM, and Ishler, is enough, standing alone, to defeat the Commissioner's claim that Ishler committed any act

---

[58]Doc. no. 11, Exhibit D, at 11-12 (citations to the record omitted).

to evade payment of a tax obligation he knew he owed.[59]

Plaintiff also argued:

> Here, even if Ishler had been grossly negligent in relying on NSA's representations that they were withholding monies from the Camaro commissions to pay the withholding tax thereon, he could not be found guilty of fraud. . . .   Reliance on withholding by third parties and statements from third parties indicating that the disputed taxes will be paid have defeated the Commissioner's fraud charges over and over again . . . .

> This is not a case where the taxpayer filled out false withholding certificates.  The withholding was claimed to have been made by an adverse third party, NSA, out of Camaro's and, ultimately, TCM's commissions.[60]

Finally, Ishler argued to the Eleventh Circuit that "[t]he Commissioner should be ordered to disclose the ultimate disposition of his withholding tax controversy with NSA and Camaro."[61]   The Eleventh Circuit subsequently upheld the Tax Court's decision to assess tax liability to plaintiff.

Based on the arguments in plaintiff's briefs to the Tax Court and the Eleventh Circuit, the only reasonable conclusion is that the issue of plaintiff's entitlement to a credit for the funds withheld by NSA as commissions was actually litigated before those courts.

Additionally, the determination that plaintiff was not entitled to a tax credit for

---

[59]*Id.* at 18.

[60]*Id.* at 22-23 (internal citations omitted).

[61]*Id.* at 27.

the withheld commissions was a necessary and critical part of the judgment in the Tax Court, which was upheld by the Eleventh Circuit.  If the Tax Court had considered plaintiff to be entitled to a $400,000 credit for the withheld commissions, it would not have assessed plaintiff with tax liability for that amount.

Finally, plaintiff had a full and fair opportunity to litigate the issue of his entitlement to a tax credit in the prior proceedings.  As set forth above, he raised the issue extensively in his briefs to both the Tax Court, and to the Eleventh Circuit.

Accordingly, plaintiff is collaterally estopped from relitigating the issue of his entitlement to a tax credit for the commissions withheld by NSA.  This issue forms the entire basis for plaintiff's claims for declaratory relief and for an accounting, and those claims — insofar as they seek relief against NSA — are due to be dismissed. On the other hand, plaintiff's claims against NSA for fraud, breach of contract, conspiracy, and violation of the Alabama Sales Representative's Commission Contracts Act all involve issues which were *not* litigated and determined in the prior federal litigation.  Accordingly, those claims may not be dismissed *on the ground they are precluded by the prior decisions of the Tax Court and the Eleventh Circuit*.  That ruling, however, does not answer the question of whether they are precluded by prior state court decisions.

       **b.**       **Alabama Supreme Court decision**

NSA also asserts plaintiff is collaterally estopped from relitigating any claims based on an alleged contract with NSA, because the Supreme Court of Alabama has decided that no enforceable contract existed between NSA and Camaro.  As NSA relies on the preclusive effect of a *state court* judgment, state preclusion principles apply.

In Alabama, "[c]ollateral estoppel is an equitable defense interposed against a party attempting to relitigate an issue that has been resolved in an earlier case *involving the same parties*."  *Ex parte Flexible Products Co.,* 915 So. 2d 34, 45 (Ala. 2005) (emphasis supplied).  A party asserting the defense must satisfy the following elements: (1) the parties in the two proceedings are identical, or in privity with one another; (2) the issues in the two proceedings are identical; (3) the issue was actually litigated in the prior proceeding; and (4) resolution of the issue was necessary to the prior judgment.  *See id.; see also Mitchell,* 942 F. 2d at 1583 (relying upon Alabama law).[62]

NSA cannot satisfy these elements, because Ishler was not a party to the Alabama Supreme Court proceeding.  The parties in the Alabama case were NSA and

---

[62]The Alabama Supreme Court has recognized that "the federal courts have held that mutuality — the requirement that the parties in both actions are the same — is no longer a prerequisite."  *Ex parte Flexible Products*, 915 So. 2d at 45.  Nonetheless, "Alabama continues to require that a party may be barred from relitigating an issue, such as duty or breach, only if that issue has previously been found adversely to that same party."  *Id.*

Camaro, not NSA and Ishler.[63]   Further, NSA expressly concedes that Ishler and

Camaro were not in privity with each other.  In its brief to this court, NSA states:

> NSA and Camaro were the *only* parties to the "Sales
> Representative Agreement." *Ishler was not in privity with, or had any*
> *rights otherwise under the contract*. [sic] There is nothing in the "Sales
> Representative Agreement" that reflects an intent on the part of NSA
> and Camaro to bestow any direct benefits under the contract upon Ishler.
> In fact, Ishler has alleged that Ishler and TCM independently engaged
> in negotiations with Camaro because of Camaro's strategic location in
> Southeast Asia. (Compl. at ¶ 16) Accordingly, Ishler asserts that he and
> TCM entered into an agreement with Camaro, independent of NSA,
> whereby Ishler/TCM and Camaro would split the NSA commissions . .
> . .[64]

Accordingly, collateral estoppel does not bar any of plaintiff's claims which are

founded on the existence of the contract between NSA and Camaro.

### 2.    Statute of limitations

NSA also argues that plaintiff's claims for fraud, conspiracy, breach of

contract, and violation of the Alabama Sales Representative's Commission Contracts

Act are barred by the applicable statutes of limitations.

### a.    Fraud

As discussed in § III(B), *supra,* a fraud claim under Alabama law must be

brought within two years after a plaintiff has discovered the facts constituting the

---

[63]*See Camaro Trading Co., Ltd. v. Nissei Sangyo America, Ltd.*, 628 So. 2d 463 (Ala. 1993),
a copy of which is attached as Exhibit A to NSA's brief in support of its motion to dismiss.

[64]Doc. no. 11, at 16 (emphasis supplied).

fraud, or within two years after the plaintiff *should have* discovered those facts. Plaintiff states that NSA "committed fraud" by "claiming the non-existence of Camaro Trading Company," and by "lying to the Internal Revenue Service in order to avoid payment for services which were, and are currently being taken advantage of by NSA."[65] NSA first attempted to eliminate Camaro's role in its business dealings with Chrysler (or to "claim the non-existence of Camaro") in 1989, when it terminated the Sales Representative Agreement with Camaro.  NSA reported the situation to the IRS soon thereafter, and an investigation ensued.  Thus, the events upon which plaintiff relies to support his fraud claim occurred in the late 1980's and early 1990's, much more than two years prior to the commencement of this action.

Plaintiff nonetheless asserts his fraud claim is timely, because he did not come to a "full understanding" of NSA's allegedly fraudulent conduct until he received the May 4, 2005 Notice of Determination from the IRS concerning his collection due process hearing.[66]  He also asserts that the fraud "is still ongoing as the money that was withheld by NSA on the paid commissions has not been paid over to the United States."[67]  These arguments are unavailing.  The relevant question is not when plaintiff fully understood the alleged fraud, but when plaintiff *discovered* (or *should*

---

[65]Doc. no. 13, at ¶¶ 16.8.3, 16.9.

[66]*See id.* at ¶¶ 16.10, 30.

[67]*Id.* at ¶ 27.

*have* discovered) it.  Plaintiff was aware, or at least should have been aware, of all the facts relevant to his fraud claim when NSA withheld commissions from Camaro, and when the IRS began its investigation.  At the very latest, he had knowledge of all relevant facts by the time the Tax Court upheld the IRS assessment against him in March of 2002.  The 2005 Notice of Determination did not notify plaintiff of any additional facts to support his fraud claim.  Instead, the Notice merely informed plaintiff that he had not provided sufficient information for the appeals committee to render a decision.  Accordingly, plaintiff's fraud against NSA claim is time-barred.

### b.    Breach of contract

A breach of contract claim under Alabama law must be brought within six years of the date on which the claim accrues.  Ala. Code § 6-2-38(9) (1975) (2005 Replacement Vol.).  The claim accrues on the date the contract is breached, not the date on which the plaintiff sustains actual damage as a result of the breach.  *AC, Inc. v. Baker,* 622 So. 2d 331, 333, 335 (Ala. 1993) (citing *Stephens v. Creel,* 429 So. 2d 278, 280 (Ala. 1983); *Lipscomb v. Tucker,* 294 Ala. 246, 258, 314 So. 2d 840, 850 (1975)).

The essence of plaintiff's breach of contract claim is that NSA failed to pay Camaro commissions, as agreed, because it withheld those commissions to satisfy its

income tax liability to the IRS.[68]  Setting aside the issue of whether plaintiff has

standing to sue for violation of the agreement between Camaro and NSA,[69] any claim

based on violation of that agreement would be time-barred.  NSA terminated the Sales

Representative Agreement with Camaro on March 31, 1989.  NSA notified Camaro

that it was withholding commissions to satisfy its potential income tax liability to the

IRS on April 12, 1989.  As these events occurred more than seventeen years ago, the

six-year limitations period on plaintiff's breach of contract claim against NSA expired

long ago.

### c.    Conspiracy

Plaintiff alleges that NSA conspired with the IRS to defraud him.  A civil

conspiracy claim under Alabama law must be brought within two years of the date of

---

[68]*See* Complaint, at ¶¶ 18-25, 51; *see also* doc. no. 13 (plaintiff's brief in opposition to NSA's motion to dismiss), at ¶¶ 15, 16.7.  Plaintiff also asserts (in his brief, but not in his complaint) that he is entitled to contract damages in *quantum meruit* due to the fact that he and TCM actually performed the services under the contract between NSA and Camaro, but did not receive compensation for those services.  He asserts that a six-year statute of limitations also applies to this claim.  *See* doc. no. 13, at ¶¶ 34-39.  As the business relationship between NSA and Camaro was terminated in 1989, and commissions were withheld by Camaro that same year, a *quantum meruit* claim also would be time-barred.

[69]NSA asserts that plaintiff does not have standing to sue for violation of the agreement between it and Camaro, because he was neither a party to that agreement, nor in privity with a party.  This argument appears to have merit.  As plaintiff himself declares, "[t]he written/express contract was between NSA and Camaro, and Ishler/TCM are not mentioned in that contract."  Doc. no. 13 (plaintiff's brief in opposition to NSA's motion to dismiss), at ¶ 37.  Even so, the court need not consider that argument, because, even if plaintiff did possess the requisite standing to sue on the contract, any breach of contract claim would be barred by the statute of limitations.

-52-

accrual.[70]  As plaintiff's fraud claim — the claim underlying the conspiracy — is time-barred, his conspiracy claim against NSA also is time-barred. [71]

> d.     **Alabama Sales Representative's Commission Contracts Act**

To the extent plaintiff's complaint can be construed as alleging a separate claim under the Alabama Sales Representative's Commission Contracts Act, Ala. Code §§ 8-24-1 *et seq.* (1975),[72] that claim also is time-barred.  The Act does not contain a separate statute of limitations provision, and this court could not locate any authority as to what the limitations period should be.  The court concludes, however, that the statute of limitations could be no longer than the six-year period for breach of contract claims codified in Ala. Code § 6-2-34 (1975).  Plaintiff's claim accrued thirty days after NSA terminated the Sales Representative Agreement with Camaro, and refused to pay further commissions under the agreement, or at the latest, thirty days after commissions resulting under the contract became due.[73]  Plaintiff does not argue

---

[70]*See* § III(B), *supra.*

[71]*See* discussion, *supra,* page 40.

[72]The better reading of the complaint is that plaintiff does not assert a separate claim under the Alabama Sales Representative's Commission Contracts Act, but that he relies upon the Act to support a claim for treble damages against NSA on his underlying breach of contract claim.  *See* Ala. Code § 8-24-3 (1975) ("A principal who fails to pay a commission as required by Section 8-24-2 is liable to the sales representative in a civil action for three times the damages sustained by the sales representative plus reasonable attorney's fees and court costs.").

[73]*See* Ala. Code § 8-24-3(c) (1975) ("All commissions that are due at the time of termination of a contract between a sales representative and principal shall be paid within thirty days after the date of termination.  Commissions that become due after the termination date shall be paid within thirty days after the date on which the commissions become due.").

that any commissions under the contract were due after May 31, 1999, the date six years before this case was filed.  Therefore, plaintiff cannot proceed against NSA under the Alabama Sales Representative's Commission Contracts Act.

In summary, plaintiff's claims against NSA for fraud, breach of contract, conspiracy, and violation of the Alabama Sales Representative's Commission Contracts Act all are barred by the applicable statutes of limitations.

## IV.  CONCLUSION

For the foregoing reasons, the motions to dismiss by defendants Commissioner of Internal Revenue, John L. Richardson, and Nissei Sangyo American, Ltd. are due to be granted.  All of plaintiff's claims will be dismissed.[74]  An appropriate order will be entered contemporaneously herewith.

DONE this 5th day of July, 2006.

_____
United States District Judge

---

[74]Plaintiff will not be allowed the opportunity to amend his complaint.  *See* doc. no. 13 (plaintiff's brief), at ¶ 40 ("An amended complaint will more thoroughly brief the Court on Ishler's rights to remedy in this case against NSA founded upon the doctrines of *quantum meruit* and unjust enrichment, and the fraud perpetrated by NSA.").  An amendment would not cure the deficiencies in plaintiff's claims.  *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999) (futility is an adequate basis for denying leave to amend).